535 F.Supp. 488 (1982)
Fred R. SPECKMAN, Clarence F. Hanneken, R. Bruce Wynne, Edgar G. Hayward, Monsignor Carl C. Poelker, Trustees of the District No. 9, International Association of Machinists and Aerospace Workers Pension Trust, Plaintiffs,
v.
BARFORD CHEVROLET COMPANY, a Missouri Corporation, Defendant.
No. 81-0795-C(C).
United States District Court, E. D. Missouri, E. D.
March 10, 1982.
Cary Hammond, St. Louis, Mo., for plaintiffs.
David Yates, St. Louis, Mo., for defendant.

*489 MEMORANDUM
MEREDITH, District Judge.
This matter is before the Court on cross motions for summary judgment by plaintiffs and defendant, and on the motion of plaintiffs for payment of withdrawal liability pending litigation. For the reasons set forth below, summary judgment will be entered in favor of defendant and against plaintiffs, and plaintiffs' motion for payment of withdrawal liability pending litigation will be denied.
Plaintiffs bring this action under the Employment Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MEPPAA"), 29 U.S.C. § 1381 et seq. Plaintiffs seek to collect withdrawal liability payments from defendant and to obtain additional relief. Jurisdiction is founded on 29 U.S.C. § 1451(c).
Defendant counterclaims seeking a declaratory judgment that the provisions of MEPPAA violate the Fifth Amendment to the United States Constitution to the extent that they create withdrawal liability for an employer who withdrew from a multiemployer pension plan prior to the date of enactment of MEPPAA (Sept. 26, 1980), but subsequent to the effective date of its withdrawal liability provision (April 29, 1980). Defendant further seeks an injunction enjoining the plaintiffs and their successors and agents from taking any action to collect withdrawal liability against it.
The relevant facts in this action are not in dispute. Plaintiffs constitute the Joint Board of Trustees of the District No. 9, International Association of Machinists and Aerospace Workers Pension Plan (hereinafter, the "Plan") and are the fiduciaries and the plan sponsor with respect to said Plan.
The Plan is a defined benefit pension plan to which more than one employer is required to contribute and which is maintained pursuant to more than one collective bargaining agreement and is therefore a multiemployer pension plan within the meaning of ERISA § 4001(a)(3) (as amended by MEPPAA § 402(a)(1)), 29 U.S.C. § 1301(a)(3). The Plan is administered from offices at 12365 St. Charles Rock Road, Bridgeton, Missouri, located within this judicial district.
Defendant, Barford Chevrolet Company, is a Missouri corporation licensed to do business in the State of Missouri and was formerly a party to successive collective bargaining agreements with District No. 9, International Association of Machinists and Aerospace Workers, obligating defendant to contribute to the Trustees of the District No. 9, I.A.M.A.W. Pension Plan on behalf of employees working within the bargaining unit represented by District No. 9, I.A.M. A.W. District No. 9, I.A.M.A.W. is a labor organization within the meaning of 29 U.S.C. § 152(5). Pursuant to the terms of the aforesaid collective bargaining agreements, defendant commenced making contributions to the Plan on August 1, 1962.
On or about March 3, 1980, after approximately 38 years in business as a Chevrolet dealership, defendant gave notice to Chevrolet Division of General Motors Corporation that it was terminating its dealership agreement. Defendant terminated its dealership agreement because of differences between it and Chevrolet which were unrelated to the Plan, and not because it was attempting to escape any obligation to contribute to the Plan. Notice of voluntary termination was given by defendant to Chevrolet in compliance with the 30-day notice provision required by the dealership agreement. The effective date of termination was April 7, 1980.
Defendant commenced winding up its affairs in March of 1980, immediately after giving notice to Chevrolet. Between April 11 and April 16, 1980 defendant sold back to Chevrolet all of its new car inventory. The only car sales made by defendant subsequent to April 16, 1980 were made in connection with the winding up of its affairs. All automobiles sold by defendant after April 16, 1980 were demonstrator models that Chevrolet refused to repurchase because they had mileage on them and special *490 order motor vehicles that had been ordered from Chevrolet prior to termination of the dealership agreement. Defendant's main facility, and all property on which it was located, were sold.
In a letter dated March 5, 1980 defendant gave notice to District No. 9, I.A.M.A.W. that it was going out of business. The letter indicated that the effective date of the termination of the General Motors Dealership Agreement was April 7, 1980, it requested the union to "advise if there is further information to clear up any matters to avoid any complications", and it stated that the "usual layoff procedures" would be followed.
Defendant then commenced termination of all its employees, including those who were in the collective bargaining unit covered by its collective bargaining agreement with District No. 9, I.A.M.A.W. By April 28, 1980, defendant had terminated all employees in the collective bargaining unit covered by the District No. 9 contract, except for one, John E. Muschany. Defendant's termination of the employees in the collective bargaining unit represented by District No. 9 was not unlawfully motivated by a desire to avoid collective bargaining or to avoid any withdrawal liability under the Plan.
The collective bargaining agreement between defendant and District No. 9 which was in effect when defendant terminated operations provided in the first paragraph of Article 34 that the defendant's obligation to make contributions to the Plan was as follows:
For the duration of this agreement, Employer agrees to pay for each employee covered by this agreement on the first working day of each month, excluding calendar days that are not working days, the sum of $115.00 per month to the Trustees of the District No. 9 I.A. of M. & A.W. Pension Trust. Such monthly payments shall be made for each calendar month and on or before the 10th day of each month. Newly hired and recalled employees beginning work on the first working day of each month, excluding calendar days that are not working days, shall also be covered by the provisions of this paragraph.
Pursuant to the terms of this agreement, for March 1980, defendant was obligated to contribute and did contribute $2,070.00 to the Plan on account of employment of 18 employees covered by the agreement on the first day of March; for April 1980, defendant was obligated to contribute and did contribute $690.00 to the Plan on account of employment of 6 employees covered by the agreement on the first day of April; and for May 1980, defendant was obligated to contribute and did contribute $115.00 to the Plan on account of employment of one employee (John Muschany) covered by the agreement on the first day of May.
ERISA § 4202 (as added by MEPPAA § 104), 29 U.S.C. § 1382, obligates trustees to determine if an employer has withdrawn from a pension plan and, if they so determine, to determine the amount of an employer's withdrawal liability, to notify the employer of the amount of the withdrawal liability, and to collect the amount of withdrawal liability from the employer. Pursuant to this obligation, plaintiffs caused to be conducted a review of the Plan records for the purpose of determining which employees had withdrawn from the Plan on and after April 29, 1980.
Plaintiffs determined that defendant had completely withdrawn from the plan. They notified defendant of the amount of its alleged withdrawal liability, provided defendant with a schedule of liability payments, and demanded payment in accordance with the schedule. The alleged liability was $38,988.00, and plaintiffs demanded payment in four quarterly installments commencing April 1, 1981 in the amount of $9,478.88 and a final payment of $1,743.26 on April 1, 1982.
Defendant denied liability for withdrawal liability payments and refused to make any such payments. Defendant further declined the request by plaintiffs to engage in arbitration proceedings.
*491 Defendant argues that summary judgment should be entered in its favor and against plaintiffs because, inter alia, it completely withdrew from the Plan prior to the effective date of MEPPAA. This Court agrees. MEPPAA was enacted on September 26, 1980. Under that Act, an employer incurs withdrawal liability only if it completely or partially withdraws from a covered pension plan on or after April 29, 1980. 29 U.S.C. §§ 1381, 1461(e)(2)(A). A complete withdrawal occurs where the employer either permanently ceases to have an obligation to contribute to the plan or permanently ceases all covered operations under the plan. 29 U.S.C. § 1383(a). The date of a complete withdrawal is the date of the cessation of the obligation to contribute or the cessation of covered operations. 29 U.S.C. § 1383(e).
In this case defendant unquestionably ceased all covered operations permanently prior to April 29, 1980. It had terminated its dealership agreement, sold its facilities, resold all of its new car stock to Chevrolet, and laid off all but one of its employees on or before April 28, 1980. Defendant acted in good faith and was not attempting to circumvent the provisions of MEPPAA.
Contrary to plaintiffs' assertions, defendant's retention of a sole employee and its contribution to the Plan on his behalf in May did not prevent its cessation from being "complete" within the meaning of the Act. A permanent cessation can occur even though an employer remains signatory to a collective bargaining agreement requiring contributions to the plan. An employer "ceases covered operations" if it ceases the business activity that gave rise to contributions to the plan. Ford, McNamara, and Stanger, "Withdrawal Liability Under ERISA After the Multiemployer Pension Plan Amendments Act of 1980," N.Y.U. 39th Annual Inst. on Fed. Tax., ERISA Supp., § 10.02[2] at 10-6. Moreover, the House Report on MEPPAA makes clear that, as under current law, a virtually complete cessation of contributions, e.g., a 98% reduction, will be treated as a complete withdrawal. H.R.Rep.No. 896, 96th Cong., 2d Sess., reprinted in [1980] U.S.Code Cong. & Ad.News 2918, 2941.
Because defendant permanently ceased all covered operations prior to April 28, 1980, it is not subject to the provisions of MEPPAA. Therefore, it has no withdrawal liability to plaintiffs under MEPPAA and is not required to engage in arbitration with them concerning such liability.
Defendant's motion for summary judgment will be granted, and judgment will be entered in favor of defendant and against plaintiffs on plaintiffs' cause of action. Plaintiffs' motions for summary judgment and for payment of withdrawal liability pending litigation are, correspondingly, denied.
In view of this Court's holding that the MEPPAA is inapplicable to defendant, the Court need not address its constitutionality. Accordingly, defendant's counterclaim for declaratory and injunctive relief, which is premised on the Act's alleged constitutional infirmities, shall be dismissed.