**UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION–INDUSTRY PENSION FUND, and John E. Boyd, a Trustee, Plaintiffs,**

v.

**G. BARTUSCH PACKING COMPANY, a Minnesota corporation, Defendant.**

**Civ. No. 4–82–12.**

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 14, 1982.

Roger A. Jensen, Peterson, Bell & Converse, St. Paul, Minn., Jeffrey R. Fuller, Reinhart, Boerner, Van Deuran, Norris & Rieselbach, S.C., Milwaukee, Wis., for plaintiffs.

Richard I. Diamond, Daniel W. Lass, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, Minn., for defendant.

MacLAUGHLIN, District Judge.

This matter is before the Court on cross motions for summary judgment. The case arises under the Employment Retirement Income Security Act of 1974 (ERISA), 29

U.S.C. § 1001 *et seq.,* as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MEPPAA), 29 U.S.C. § 1381 *et seq.* Plaintiff seeks to collect withdrawal liability payments from defendant. Jurisdiction is conferred by 29 U.S.C. § 1451.[1]

## FACTS

Plaintiff United Food and Commercial Workers International Union-Industry Pension Fund is a pension plan trust fund established to administer a multiemployer employee pension benefit plan set up under ERISA. Plaintiff John E. Boyd is a trustee of the plaintiff pension fund. The term "plaintiff" as used herein refers to both the pension plan and the trustee. Defendant is a Minnesota corporation formerly engaged in meat cutting and packing operations in St. Paul. Defendant was a party to a series of collective bargaining agreements with Local P–4 of the United Food and Commercial Workers International Union. The last of these agreements took effect November 1, 1976, and obligated defendant to make contributions on behalf of its covered employees to the plaintiff pension plan.

MEPPAA imposes withdrawal liability on an employer who completely or partially withdraws from a multiemployer pension plan. 29 U.S.C. § 1381. Such an employer becomes liable to the plan for an amount equal to its pro rata share of unfunded, vested pension benefits.[2] 29 U.S.C. § 1391. MEPPAA was signed into law September 26, 1980, and was made retroactive to April 29, 1980.

The issue in this case is whether defendant withdrew from the pension plan prior to the effective date of MEPPAA which created withdrawal liability. Under MEPPAA, a complete withdrawal from a multiemployer plan occurs when an employer—

(1) permanently ceases to have an obligation to contribute under the plan, or

(2) permanently ceases all covered operations under the plan.

29 U.S.C. § 1383(a). Plaintiff maintains that defendant did not completely withdraw under this definition until after the effective date of the statute; defendant insists that it completely withdrew before the statute took effect. Defendant also challenges MEPPAA's retroactivity as a violation of the due process clause of the fifth amendment.[3] The parties have stipulated that if withdrawal was not accomplished prior to the effective date of the statute, defendant's liability to the plan would be $337,200.

Several undisputed facts are relevant to whether defendant's withdrawal from the plan occurred prior to the effective date of MEPPAA. On April 23, 1979, defendant closed its plant, laying off indefinitely all of its employees covered by the collective bargaining agreement. Depressed conditions in the livestock market and lack of finances

1. MEPPAA calls for mandatory arbitration in the event of a dispute over the existence or amount of withdrawal liability. 29 U.S.C. § 1401(a). However, if no arbitration proceeding is initiated within 180 days after the pension plan sponsor notifies the employer of the former's demand for withdrawal payments, then the plan sponsor may sue in federal or state court for collection. *Id.* § 1401(b)(1). In this case, plaintiff notified defendant of its demand for withdrawal payments in a letter dated May 26, 1981, Plaintiff's Complaint, Exhibit B. No arbitration was held. Plaintiff filed this suit on January 7, 1982, well after the 180 day limit. Jurisdiction is therefore appropriate.

2. Formerly, an employer incurred withdrawal liability only if the plan terminated within five years of the employer's withdrawal. H.R. Rep. No. 96–869, Part II, 96th Cong., 2d Sess. 15, *reprinted in* 1980 U.S. Code Cong. & Ad. News 2992, 3004. This rule gave contributors to a financially shaky plan an incentive to withdraw as early as possible. *Id.* MEPPAA was designed to remove that incentive.

3. To date, three decided cases have dealt with MEPPAA's constitutionality. In *Shelter Framing Corp. v. Carpenters Pension Trust,* 543 F.Supp. 1234 (C.D. Cal. 1982), the court held the statute unconstitutional as applied to an employer who withdrew before the statute was enacted, but within the period of the statute's retroactivity. A different court reached the opposite result in *Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund,* 534 F.Supp. 1340 (E.D.Pa.1982). In *S & M Paving, Inc. v. Construction Laborers Pension Trust,* 539 F.Supp. 867 (C.D. Cal. 1982), the court upheld the statute as applied to an employer who withdrew after the statute's enactment.

were the apparent causes of the plant's closing. Defendant has conceded that it did not intend to permanently close its plant in April of 1979. In fact, the vice president of the company actively sought financing and solicited new business in an attempt to enable the plant to reopen. Nevertheless, the plant never reopened and none of the employees were hired back. The plant is now permanently closed.

On July 10, 1980, 15 months after the plant's closing but before the enactment of MEPPAA, an arbitration was conducted between Local P–4 and the present defendant to determine defendant's liability for severance pay. Under the collective bargaining agreement, the laid off union employees of the company were entitled to severance pay if they were permanently separated from their employment or if they were laid off for two years. The union argued that the employees were "permanently separated" from their employment. While conceding that the company honestly intended to reopen, the union contended that "no reasonable expectation" existed that the plant would ever reopen. Defendant maintained that the closing of the plant was not done with the intent of permanently terminating operations and that the employees were therefore not entitled to severance pay. In a decision dated September 18, 1980, the arbitrator found that the employees had not been permanently separated from their employment, and denied the claim for severance pay since two years had not then elapsed from the date of the lay offs.[4] Rejecting the union's "speculative testimony," Stipulation, Aug. 5, 1982, Exhibit B at 10, the arbitrator based his decision on a finding that "at the date of the layoff ... there existed no intention to effect a permanent closing of the plant ...." *Id.* at 9; *see also id.* at 8, 10.

**4.** Upon the expiration of the two year period, the union obtained a judgment against the defendant for the amount of the severance pay. The union is currently seeking to enforce that judgment in state court.

**5.** Normally offensive collateral estoppel is used where an issue was resolved *against* a defendant in a prior adjudication. Here, of course, the arbitrator's decision that there had not been a permanent separation of the employees

## DISCUSSION

### A. Collateral Estoppel

The Court must first determine whether, by virtue of collateral estoppel, the arbitrator's decision conclusively establishes that defendant did not withdraw from the pension plan prior to the effective date of MEPPAA.

Four conditions must be met for collateral estoppel of an issue to apply: "(1) the issue [is] identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue." *Oldham v. Pritchett,* 599 F.2d 274, 279 (8th Cir. 1979), *citing Gerrard v. Larsen,* 517 F.2d 1127, 1130 (8th Cir. 1975).

The latter three conditions require little discussion. The arbitrator's decision was final and on the merits. The same defendant is involved here as in the arbitration. There has been no suggestion that the defendant did not have a full and fair opportunity to litigate the issue at the arbitration.

As to the first requirement, several cases establish that an arbitration decision does count as a prior adjudication. *E.g., Ritchie v. Landau,* 475 F.2d 151, 155 (2d Cir. 1973); *Maidman v. O'Brien,* 473 F.Supp. 25, 29 (S.D.N.Y.1979). In these cases, however, collateral estoppel was used defensively; that is, the defendant took advantage of a prior adjudication against the plaintiff to bar the plaintiff's claim. Here, plaintiff seeks to use the arbitration decision against the defendant offensively.[5]

from their employment favored the defendant because it precluded liability for severance pay. But whether the defendant won or lost in the prior proceeding is irrelevant to whether collateral estoppel should be applied since the purpose of collateral estoppel is to avoid the relitigation of issues that have once been finally determined. *See Ritchie v. Landau,* 475 F.2d 151, 156 (2d Cir. 1973).

856

■ The Supreme Court has held that offensive collateral estoppel may be used by a plaintiff who was not a party to the first action. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979); *see generally* Callen and Kadue, *To Bury Mutuality, Not to Praise It: An Analysis of Collateral Estoppel After Parklane Hosiery Co. v. Shore,* 31 Hastings L.J. 755 (1980). Permitting the use of offensive collateral estoppel is a matter within the "broad discretion" of the trial courts. *Parklane Hosiery Co.,* 439 U.S. at 331, 99 S.Ct. at 651. Offensive collateral estoppel should not be applied "where a plaintiff could have easily joined in the earlier action or where ... the application ... would be unfair to a defendant ...." *Id.*

■ There has been no suggestion that plaintiff could have joined in the arbitration proceeding. Plaintiff had no interest in the resolution of the union's claim for severance pay, and, in any event, MEPPAA had not yet been enacted. In assessing whether application of offensive collateral estoppel is fair to a party, one factor to consider is the foreseeability of future litigation at the time of the first adjudication. *Id.* at 330, 99 S.Ct. at 651. Defendant could not have foreseen the present litigation at the time of the arbitration since the law giving rise to plaintiff's cause of action had not yet been enacted. It may well be that defendant would have altered its strategy at the arbitration had it known of its possible liability for withdrawal payments. But the Court need not decide whether application of offensive collateral estoppel would be unfair to defendant since the Court concludes that collateral estoppel is inappropriate for a different reason.

■ The first condition necessary for collateral estoppel to apply is not met because the issue in this case is not identical to the issue decided at the arbitration. The arbitrator based his decision that severance pay was not yet due on the finding that "*at the date of the layoff* on April 23, 1979 there existed no *intention* to effect a permanent closing of the plant ...." Stipulation, Aug. 5, 1982, Exhibit B at 9 (emphasis added); *see also id.* at 8, 10. In contrast, nothing in MEPPAA or its legislative history suggests that, for the purpose of determining when a complete withdrawal occurs, a court is bound by the intention of the employer at the time of the initial cessation of covered activities. As discussed in detail below, the Court concludes that such intention is not determinative in the case of employers who ceased covered operations before the effective date of MEPPAA. Collateral estoppel is therefore inappropriate due to the lack of identity of the issues.[6]

## B. *Complete Withdrawal under MEPPAA*

■ The remaining question is whether defendant completely withdrew from the pension plan before the effective date of MEPPAA. MEPPAA provides that a complete withdrawal occurs when an employer either

> (1) permanently ceases to have an obligation to contribute under the plan, or

> (2) permanently ceases all covered operations under the plan.

29 U.S.C. § 1383(a). Plaintiff does not dispute that defendant ceased to have an obligation to contribute under the plan after the April 23, 1979 layoff of all covered employees.[7] The only issue is whether the

6. Plaintiff suggests that defendant should be bound under an equitable estoppel theory. That is, since defendant maintained at the arbitration that it had not permanently closed its plant, it should not now be allowed to assert the opposite. But plaintiff misconceives defendant's argument in this case. There is no inconsistency between defendant's position at the arbitration that it did not then intend to keep its plant closed permanently and its present position that, regardless of its intention at the time of the arbitration, the failure of the

plant to ever reopen means that the initial closing was permanent.

The Court's decision that collateral estoppel is inapplicable does not allow defendant to "have its cake and eat it too." Although the arbitrator found defendant did not then owe severance pay, the defendant has since been held liable for the severance pay. *See* note 4 *supra.*

7. Section XIX of the collective bargaining agreement provides:

cessation of defendant's obligation to contribute to the plan was permanent.[8]

■ Counsel for plaintiff argued that the cessation of defendant's obligation to contribute to the plan was not permanent because if the defendant had subsequently recalled its employees to work within the term of the collective bargaining agreement, it would have had to begin contributing to the plan again. This argument is flawed for two reasons. First, "[a] permanent cessation can occur even though an employer remains signatory to a collective bargaining agreement requiring contributions to the plan." *Speckman v. Barford Chevrolet Co.,* 535 F.Supp. 488, 491 (E.D. Mo. 1982).[9] Second, MEPPAA's legislative history reveals that an employer can be considered to have completely withdrawn from a pension plan even though the employer later resumes covered operations:

> With respect to an employer who has *completely withdrawn from a multiemployer plan and who subsequently resumes covered operations under the plan or renews an obligation to contribute to the plan,* the PBGC [Pension Benefit Guaranty Corporation] is to prescribe regulations regarding the reduction or waiver of the employer's withdrawal liability to the extent consistent with the policy of protecting remaining employers, beneficiaries, and other participants.

H.R. Rep. No. 96–869, Part II, 96th Cong., 2d Sess. 17, *reprinted in* 1980 U.S. Code Cong. & Ad. News 2292, 3006 (emphasis added). Thus, even under plaintiff's scenario, a resumption of defendant's obligation to contribute to the plan would not necessarily have precluded a finding that the initial cessation of the obligation was "permanent," as that term is used in MEPPAA.

It is true that defendant did not intend to permanently cease its covered operation when it closed its plant and laid off its employees in April of 1979. Neither MEPPAA nor its legislative history discusses whether intent is an element of complete withdrawal.[10] But the purpose and policy of the Act suggest that applying MEPPAA to an employer who ceased covered operations prior to the effective date of the Act and never resumed them would be unwarranted even though that employer did not initially intend to permanently cease covered operations.

MEPPAA was enacted in order to deter employers from withdrawing from plans by replacing the former contingent liability for

---

The Company shall pay $56.40 per month for employees who work an average of twenty-four (24) hours or more per week for the previous month into the Amalgamated National Industry Pension Fund.

Stipulation, Aug. 5, 1982, Exhibit A at 24. Defendant's obligation to contribute to the plan thus ceased approximately one month after it laid off all of its covered employees in April of 1979.

8. The issue is one of law, not of fact, because its resolution depends on an interpretation of the statute. Since no issues of material fact are present, this case may properly be disposed of through summary judgment. Fed. R. Civ. P. 56(c).

9. As far as the Court is aware, *Speckman* is the only reported case to decide whether an employer who ceased covered operations prior to the effective date of MEPPAA is subject to withdrawal liability. The *Speckman* court granted the employer, an automobile dealership, summary judgment based on the court's finding that the employer had permanently ceased all covered operations before MEPPAA took effect. The employer had laid off all but one of its employees, terminated its dealership, sold its facilities, and resold its inventory before April 29, 1980. Plaintiff argues that *Speckman* is distinguishable because although defendant in this case laid off all its employees prior to the effective date of MEPPAA, it did not sell its plant or equipment. However, a careful reading of *Speckman* shows that the employer's sale of its assets was only one factor in the court's decision to grant the employer summary judgment. The court also considered that the employer "acted in good faith and was not attempting to circumvent the provisions of MEPPAA." 535 F.Supp. at 491. As discussed below, this additional factor is also present in this case, and argues against imposing withdrawal liability on defendant.

10. The relevant legislative history is H.R. Rep. No. 96–869, Part I, 96th Cong., 2d Sess. 73–74, *reprinted in* 1980 U.S. Code Cong. & Ad. News 2918, 2941–42, and H.R. Rep. No. 96–869, Part II, 96th Cong., 2d Sess. 16–17, *reprinted in* 1980 U.S. Code Cong. & Ad. News 2992, 3005–06.

withdrawal with absolute liability. *See* note 2 *supra.* Applying MEPPAA to the defendant would not serve the deterrent function of the Act since the defendant had already ceased contributing to the plan for reasons beyond its control prior to the effective date of the Act.

MEPPAA was also designed to prevent bad faith withdrawals by employers seeking to avoid withdrawal liability. MEPPAA was deliberately made retroactive to avoid this type of behavior by employers who might learn of the pending imposition of withdrawal liability. Here, defendant acted in good faith when it initially closed its plant. That closing was motivated by economic hardship rather than defendant's desire to avoid its obligations under the pension plan. Further, there has been no allegation that defendant acted in bad faith in subsequently deciding not to resume its operations. Therefore, the Court concludes that imposing withdrawal liability on defendant would not further the intended purposes of the statute.

Accordingly, IT IS ORDERED that defendant's motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied. In view of the Court's disposition of this case, it is unnecessary to consider defendant's constitutional challenges to MEPPAA.

LET JUDGMENT BE ENTERED ACCORDINGLY.