F.H. COBB COMPANY and Super Food Services, Inc., Plaintiffs,

v.

NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND; Paul E. Bush, Rocco F. Deperno, Victor Mousseau, Jack Canzoneri, Irving Wisch, Kepler Vincent and T. Howard Nolan as Trustees of the New York State Teamsters Conference Pension and Retirement Fund, Defendants.

No. 82–CV–765.

United States District Court,
N.D. New York.

April 17, 1984.

Bond, Schoeneck & King, Syracuse, N.Y., for plaintiffs; L. Lawrence Tully, Syracuse, N.Y., of counsel.

Maloney, Viviani, Higgins & Kelly, New York City, for defendants; Arthur J. Viviani, New York City, of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), a participating employer that withdraws from a multiemployer pension plan is required to continue funding its proportionate share of the plan's unfunded benefit obligations. 29 U.S.C. § 1381. Congress imposed withdrawal liability upon employers in order to "relieve the funding burden on remaining employers and to eliminate the incentive to pull out of a plan which would result if liability were imposed only on a mass withdrawal by all employers." H.R.Rep. No. 869, 96th Cong., 2d Sess., see generally, *Textile Workers Pension Fund v. Standard Dye & Finishing Co.*, 725 F.2d 843 (2d Cir.1984), *reprinted in* 1980 U.S.Code Cong. & Ad.News 2918, 2935. Although the MPPAA was enacted on September 26, 1980, withdrawal liability was imposed retrospectively upon any employer withdrawing on or after April 29, 1980. On this motion by plaintiffs for summary judgment the court must determine whether any genuine issue exists as to plaintiffs' claim that F.H. Cobb Co. "permanently ceased all covered operations" within the meaning of the MPPAA, 29 U.S.C. § 1383, prior to April 29, 1980, and is therefore not subject to withdrawal liability.

## BACKGROUND

The background of this action, as established by affidavits and documentary evidence, and by uncontroverted statements pursuant to Local Rule 10(c), is as follows. F.H. Cobb Co., a subsidiary of Super Food Services Inc., was engaged in the business of distributing food and non-food items on a wholesale basis to retail customers. In January, 1980, Super Food Services, Inc. decided to discontinue the entire F.H. Cobb operations for business reasons unrelated to F.H. Cobb's pension operations. The Chairman of the Board of Super Food explained to the shareholders that the New York operations were being discontinued because of F.H. Cobb's "inability to achieve a satisfactory return of assets," and because of "inflationary pressures on the balance sheet." Plaintiffs' Exhibit 2. Accordingly Super Food signed an agreement with S.M. Flickinger, Inc. on January 16, 1980, providing for the sale or assignment by Super Food to Flickinger of all F.H. Cobb store and warehouse leases and related assets. The closing took place on February 15, 1980, and F.H. Cobb "transferred all of its retail customers to Flickinger by March 9, 1980." Plaintiffs' 10(c) Statement ¶ 15. Since March 8, 1980, F.H. Cobb has not engaged in the wholesale distribution of food and non-food items to retail customers.

However, in February of 1980, F.H. Cobb advised Teamsters Local Union No. 317 that it would need approximately 10 employees for a period of time, after all other employees had been laid off, to perform work incidental to the closure of operations; i.e., moving inventory and equipment out of the F.H. Cobb warehouse. F.H. Cobb stated in its request that such employees would be considered to "have completed their obligation to us regarding paragraph 26.5 of our agreement," Plaintiffs' Exhibit 5, a reference to the employees' termination for the purpose of qualifying for severance pay. Plaintiffs state in their 10(c) Statement:

8. Between March 8 and May 16, 1980, F.H. Cobb employed a small group of employees—ranging in number from nine to sixteen, or between 5% and 9% of the pre-closure workforce—for the sole and limited purpose of performing tasks that were necessary and incidental to the permanent closure of the business operation. Specifically, these employees transferred the remaining merchandise from the F.H. Cobb warehouse to the Flickinger warehouse and maintained F.H. Cobb's warehouse during the transfer process.

9. None of these employees performed driving or warehousing services related to F.H. Cobb's normal business operation of distributing food and non-food items to retail customers. None of these employees worked for F.H. Cobb after May 16, 1980.

10. In May of 1980, F.H. Cobb made its final contribution to the New York State Teamsters Conference Pension and Retirement Fund in the amount of $846.30 for the hours worked by these employees between May 1 and May 16. F.H. Cobb also contributed $865.30 in May of 1980 as deferred compensation on behalf of certain employees who were entitled to accrued vacation pay and severance pay for services rendered over prior months and years, and $49.00 on behalf of an employee who was out of work because of a Workers' Compensation Injury.

As discussed previously, on September 26, 1980, Congress enacted the MPPAA and provided that the withdrawal liability provisions contained therein were effective retroactively to April 29, 1980. On May 4, 1982 and June 10, 1982, the Teamsters Pension Fund sent letters to the attorneys for Super Food and F.H. Cobb asserting that because the plaintiffs had not ceased contributing to the Pension Fund until May, 1980, that plaintiffs were required to pay withdrawal liability of $846,385.00 to the Pension Fund within 60 days. Plaintiffs therefore commenced this action, in July of 1982, for a declaration of their non-liability.

*Discussion*

Although plaintiffs' complaint, which contains 12 causes of action, raises a variety of challenges to the MPPAA and its application to plaintiffs, the only issue on this summary judgment motion is whether F.H. Cobb completely withdrew from the multiemployer pension plan prior to April 29, 1980.

 Before reaching that issue, it is necessary to address defendants' preliminary contention that this matter must be submitted to arbitration. Although the MPPAA does provide that disputes concerning determinations of employer obligations to a plan "shall be resolved through arbitration," 29 U.S.C. § 1401, the particular issue presented here—the determination of whether there are genuine issues of fact as to plaintiffs' withdrawal from the plan, or whether plaintiffs are entitled to judgment as a matter of law—may be adjudicated in federal district court without exhausting arbitral remedies. *I.A.M. National Pension Plan, Benefit Plan C v. Stockton TRI,* 727 F.2d 1204 at 1208–1210 (D.C. Cir.1984).

Turning then to the merits, a "complete withdrawal" from a multiemployer pension plan must satisfy the requirements of 29 U.S.C. § 1383:

> (a) Determinative factors. For the purposes of this part, a complete withdrawal from a multiemployer plan occurs when an employer—
>
> (1) permanently ceases to have an obligation to contribute under the plan, or
>
> (2) permanently ceases all covered operations under the plan.

As a number of courts have noted, the legislative history of the MPPAA reveals that Congress intended the cessation of "virtually all operations" to constitute "complete withdrawal" for MPPAA purposes. Plaintiffs direct the court's attention to the following excerpts:

> It is intended, however, that a complete withdrawal occurs, as under current law, where an employer has ceased *virtually all operations* at the facility for which

the employer makes contributions to the plan. H.R.Rep. No. 869, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong., Ad.News 2918, 2936 [emphasis added]. The bill would treat an employer as withdrawing from a multiemployer plan when the employer (1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan. Current law does not define a withdrawal. As under current law, a *virtually complete cessation of contributions,* e.g., a 98 percent reduction, that has the same effect on the plan as a complete cessation of contributions, is a complete withdrawal. H.R.Rep. No. 869, 96th Cong., 2d Sess. *reprinted in* 1980 U.S.Code Cong., Ad.News 2918, 2941 [emphasis added].

The caselaw uniformly follows this "practical approach" in determining whether there has been a complete withdrawal. In *Speckman v. Barford Chevrolet,* 535 F.Supp. 488 (E.D.Mo.1982), an automobile dealership closed on March 5, 1980, but kept one employee (who constituted 6% of the workforce) on to perform phase-out work; Barford made pension-plan contributions on behalf of that employee after April 29, 1980, the effective date of the MPPAA. The district court nevertheless ruled that Barford had permanently ceased all covered operations prior to April 29, and was not subject to the withdrawal liability provisions of the MPPAA.

Judge Sprizzo in the Southern District of New York faced an analogous, though not identical problem, in *Textile Workers Pension Fund v. Standard Dye & Finishing Co., Inc.,* 549 F.Supp. 404 (S.D.N.Y.1982). The employer therein ceased production and laid off most workers by June 20, 1980, but retained employees who conducted phase-out work until October 31, 1980 and made contributions on their behalf. When the employer challenged the imposition of liability on the grounds that retroactive application was unconstitutional, the pension fund argued that in this employer's case, the imposition was prospective, be-

cause it retained employees even after the MPPAA was enacted in August. Judge Sprizzo rejected the pension fund's argument, stating that:

The fact that the process of liquidation may have extended beyond the date when the MPPAA was enacted is of no consequence. Pension fund liability cannot properly be imposed on the basis of acts incident to a process of liquidation.

The court therefore proceeded to reach the question of the constitutionality of the retrospective imposition of liability, and upheld the statute. That decision was recently affirmed. *Textile Workers Pension Fund v. Standard Dye & Finishing Co., Inc., supra,* 725 F.2d 843 (2d Cir.1984).

Accordingly, F.H. Cobb will have "permanently ceased all covered operations" within the meaning of the MPPAA if, as it contends, it permanently ceased all of its regular business operations and sold its assets, all in good faith; and terminated all of its employees except for a relatively small number retained temporarily to perform phase-out tasks incident to the closure of operations.

Defendants attempt to avoid summary judgment by raising an issue of fact with respect to the above-mentioned conditions. They contend that "there are two factual issues which are uniquely within the knowledge of the plaintiff and which should be explored by limited documentary and testimonial discovery:" (1) whether Super Foods Service, Inc., through some other entity, intended or actually did return to its business within the jurisdiction of defendants' Fund; and (2) whether a principal purpose of the cessation of business was to evade or avoid withdrawal liability.

Defendants have attached to their motion papers an attorney's affidavit, a copy of the collective bargaining agreement between F.H. Cobb and the Teamsters, the Pension Fund agreement, and an employers report related to the pension fund. None of these items raises an issue as to Super Foods' continuing operations or F.H. Cobb's good faith in withdrawing.

In *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983) the Second Circuit thoroughly reviewed the principles governing summary judgment motions. As it stated:

A party moving for summary judgment has the burden of demonstrating the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c).... Ambiguities or inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the summary judgment motion.... However, mere allegations in the non-moving party's pleadings are insufficient to show that there is a triable issue of fact if the moving party has made the necessary Rule 56(c) showing. Fed.R.Civ.P. 56(e); see also .. [*United States of America v.*] *Pent-R-Books,* 538 F.2d [519] at 529 (if the moving party carries its preliminary burden, the opposing party may not defeat the motion by relying on the contentions of its pleadings; rather it must produce significant probative evidence tending to support [its position] ).... A non-moving party may not rely on mere conclusory allegations but must set forth "concrete particulars." 722 F.2d at 968–69 [citations omitted].

This is a clear instance in which the movant has met its burden through affidavits, documentary evidence and a 10(c) statement; and the non-movant has failed to produce any probative evidence in rebuttal. As the Second Circuit has held, "the mere possibility that a factual dispute may exist, without more, is not enough to overcome a convincing presentation by the moving party." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438 (2d Cir. 1980).

To be sure, *Quinn* also holds that "At least when the party opposing the motion has not been dilatory in seeking discovery, summary judgment should not be granted when he is denied reasonable access to potentially favorable information." 613 F.2d at 445. In this instance, however, it appears that the defendants have had a full opportunity for over 1½ years to seek some

factual basis for the defenses they now seek to raise. Under the circumstances, the plaintiffs are justified in arguing, as they do in their Reply Memo, that " '(e)xploratory' discovery at this stage...would be unfair and unproductive." *See I.A.M. National Pension Fund, Benefit Plan C. v. Schulze Tool & Die Co., Inc.,* 564 F.Supp. 1285, 1297 (N.D.Cal.1983) (granting summary judgment for employer noting that defendants failed to produce contrary evidence on this point despite "ample opportunity" to do so).

One final contention needs to be addressed. Defendant cites *Transport Motor Express v. Central States Pension Fund,* 724 F.2d 575 (7th Cir.1983), for the proposition that the number of employees who continue to work after the cessation is significant in determining withdrawal liability. While that may be so, it is undisputed here that the number never exceeded 9% of the pre-closure workforce, and that such employees only performed work related to closure. While eventually some court may have to draw the line at some specified percentage and declare that, for instance, the retention of 15% or 20% of the workforce for "closure" related work negates a purported withdrawal, 9% is not the place to draw that line, particularly where the 9% was not a constant number, but was a peak number of employees during a two-month phasing out period.

In sum, it appears to the court that the plaintiffs have met their burden of establishing the absence of any genuine issue as to the fact that F.H. Cobb permanently ceased all covered operations prior to April 29, 1980, for reasons unrelated to its pension obligations. It is therefore,

ORDERED, that summary judgment be entered for the plaintiffs, declaring its non-liability under the withdrawal liability provisions of the MPPAA.

IT IS SO ORDERED.