Joseph P. CONNORS, Sr., et al., Plaintiffs,

v.

B & W COAL COMPANY, INC., et al., Defendants.

Civ. A. No. 84–2606.

United States District Court, District of Columbia.

Oct. 21, 1986.

**3.** *Jensen v. Quaring,* —— U.S. ——, 105 S.Ct. 3492, 86 L.Ed.2d 383 (1985).

E. Calvin Golumbic, Howard B. Possick, R. Steven Holt, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for plaintiffs; William F. Hanrahan, Gen. Counsel, Gerald E. Cole, Jr., Deputy Gen. Counsel, Israel Goldowitz, Asst. Gen. Counsel, Office of Gen. Counsel, United Mine Workers of America, Health and Retirement Funds, Washington, D.C., of counsel.

LeRoy Katz, Katz, Kantor & Perkins, Washington, D.C., for B & W Coal Co., a/k/a B & W Coal Co., Inc., Orlando C. Worthington, Herbert Bolden and Calvin A. Browning.

Michael D. Foster, Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., Henry F. Schuelke, III, Janis, Schuelke & Wechsler, Washington, D.C., for Bluestone Coal Corp.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

This is an action by trustees of the United Mine Workers of America 1950 and 1974 Pension Plans to collect "withdrawal liability" under the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. § 1001 *et seq.* (1982). The matter is now before the Court in the form of two motions. First, a motion by plaintiffs for partial summary judgment against defendant B & W Coal Company, Inc. Second, a motion by the Bluestone Coal Corporation, third party defendant, to dismiss for lack of subject matter and personal jurisdiction. For the reasons stated below, both motions will be granted.

### I

The enactment of ERISA in 1974 was the beginning of the federal government's attempt to regulate private pension plans in a comprehensive manner. ERISA covered both single employer plans—those created, operated, and maintained by one employer

acting alone—and multiemployer plans. In 1980, Congress substantially amended the rules governing the latter type of plan. Among these amendments were changes in the rules governing an employer's withdrawal from a multiemployer plan. *See generally Peick v. Pension Benefit Guaranty Corp.*, 724 F.2d 1247 (7th Cir.1983).

Under the amendments, an employer who withdraws from a multiemployer pension plan incurs a so-called withdrawal liability; that is, he is required immediately to begin to pay a fixed and certain debt owned to the plan. *See* 29 U.S.C. § 1381(a). The details of withdrawal liability are complex: complete withdrawal occurs where an employer either permanently ceases to have an obligation to contribute to the plan or permanently ceases covered operations under the plan (§ 1383(a)); when an employer withdraws from such a plan, the plan sponsor—in this case the trustees—must determine the amount of the employer's withdrawal liability, and collect that amount from the employer (§ 1382); and the plan must give notice and demand payment of the withdrawal liability in accordance with a schedule of payments as soon as practicable after the employer's withdrawal (§ 1399(b)(1)).

Not later than 90 days after receiving notice and demand, the employer may request a review of the plan's withdrawal determination (§ 1399(b)(2)(A)). The plan then notifies the employer of its decision on review; if the employer disagrees with that decision, it may initiate arbitration (§ 1401(b)(1)); and the withdrawn employer must make withdrawal liability payments during review and arbitration (§ 1399(c)(2)). An employer's failure to make any withdrawal liability payment when due will constitute a default if not promptly cured, and upon such a default, the plan "may require immediate payment of the outstanding amount of [the] employer's withdrawal liability" plus accrued interest (§ 1399(c)(5)).

These detailed provisions are a vital part of ERISA's scheme of protecting the interests of participants in employee benefit plans and their beneficiaries. In particular, the withdrawal liability provisions help to ensure that pension plans will not be rendered insolvent or incapable of meeting their obligations when one of the contributing employers withdraws. *Peick,* 724 F.2d at 1271. The withdrawal provisions apply to any employer's withdrawal from a multiemployer pension plan after September 26, 1980.[1] In order to decide plaintiffs' motion for partial summary judgment, the Court must determine whether, as a matter of law, defendant B & W Coal Company, Inc., withdrew from the plan before or after that date.

## II

The facts underlying this lawsuit are as follows.[2] Defendant B & W Coal Company, Inc., was established as a partnership of defendants Herbert Bolden and Orlando

---

**1.** The MPPAA became effective on September 26, 1980. As originally drafted, however, the withdrawal liability provisions applied retroactively to any withdrawal after April 29, 1980—one day before defendant B & W Coal Company, Inc., alleges that it withdrew from the plan in question. In *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984), the Supreme Court upheld the constitutionality of this 5-month retroactive coverage. Congress quickly responded by amending the MPPAA to exempt employers who withdrew before September 26, 1980 or who had binding agreements to withdraw before that date. *See* Deficit Reduction Act of 1984, 98 Stat. 494, 899, Pub.L. No. 98–369, § 558.

**2.** The Court of course has the obligation, on a motion for summary judgment, to view and resolve all inferences to be drawn from the underlying facts, together with all disputed matters, in the light most favorable to the party opposing the motion—in this case, the defendant. *See Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Similarly, a summary judgment motion is not the place to resolve issues of credibility or disputed fact. *See In re Atlas Pipe, Inc.,* 668 F.2d 905 (6th Cir. 1982). In any event, defendant has pointed to only one "genuine issue" of disputed material fact: whether it withdrew from the pension plan on April 30, 1980 or on March 27, 1981. This "fact" will determine whether it falls within or without the MPPAA withdrawal liability rules. Whether this issue is one of disputed *fact* or *law* is discussed *infra.*

Worthington in 1975. The company engaged in the business of coal mining and operated as a contract miner for Bluestone Coal Corporation, the third party defendant in the instant case.

In October 1976, Orlando Worthington signed the 1974 National Bituminous Coal Wage Agreement on behalf of B & W Coal. About three years later, Worthington and Bolden, as partners, signed the 1978 Bituminous Coal Wage Agreement on behalf of B & W Coal. Under these agreements, B & W Coal was obligated to make and in fact did make contributions to the United Mine Workers of America Pension Plans, on behalf of employees covered by the agreements.

On April 30, 1980, defendant Bolden sold his partnership interest in B & W Coal to Calvin Browning. According to that agreement, the partnership would "continue operating as B & W Coal Company." In fact, B & W continued its operations and continued also to make contributions to the pension plans pursuant to the 1978 agreement.

In November 1980, Browning and Worthington incorporated the business as B & W Coal Company, Inc. The corporation continued the former mining operations without interruption, using the same mines, employees, and offices. It also continued to contribute to the pension plans. B & W Coal Company, Inc., did not, however, sign the 1981 Bituminous Coal Wage Agreement, which would have obligated it to continue contributing to the pension plans.

The trustees notified B & W Coal of what they considered its withdrawal liability by letters dated May 4, 1983. The letters authorized B & W Coal to discharge its liability to the Plans according to a specified payment schedule. B & W Coal neither made any withdrawal liability payments, requested review of the trustee's determination, nor furnished additional information. On August 8, 1983, the trustees demanded by mail "all past due" withdrawal liability payments, plus interest, no

later than October 17, 1983. The trustees also warned the company that if payments were not made by that date the withdrawal liability of $81,047.58 to the 1950 Pension Plan and $70,075.67 to the 1974 Pension plan would be due without further demand.

### III

Plaintiffs advance three main arguments in support of their motion for partial summary judgment. First, plaintiffs argue that B & W Coal withdrew from the Plans in March 1981 by its failure to sign the 1981 Bituminous Coal Agreement, and not in April 1980 when the original partnership dissolved. Consequently, plaintiffs contend, defendant B & W Coal owes withdrawal payments under the MPPAA. Second, plaintiffs contend that B & W Coal is liable for withdrawal payment as a matter of statutory law, regardless of any contractual agreement by Bluestone Coal to make contributions to the plans. Third, plaintiffs maintain that B & W's failure to request review and arbitration precludes it from contesting either the fact or the amount of its withdrawal liability. The Court will deal with each of these points in turn.

In its opposition to the partial summary judgment motion, defendant B & W Coal repeatedly and strenuously asserts that it withdrew from the pension plans on April 30, 1980, when the original partnership dissolved, "long before the effective date for imposition of withdrawal liability under the MPPAA." [3] Moreover, defendants present this as the "primary issue of fact raised by the instant case." [4] However, it is apparent that, as a matter of law, B & W Coal withdrew from the pension plans on March 27, 1981.

As explained above, complete withdrawal from a MPPAA plan occurs when an employer permanently ceases to have an obligation to continue to contribute to the plan or permanently ceases covered operations under the plan. Despite defendants' asser-

**3.** Defendant's Statement of Points and Authorities in Opposition to Plaintiffs' Motion for Partial Summary Judgment at 7–8.

**4.** *Id.* at 6.

tions, the facts dictating whether there has been a complete withdrawal in the instant case are not disputed. Defendants do not deny that B & W Coal signed the 1978 Bituminous Coal Agreement, that it contributed to the Plans under that agreement until it expired, and that it neither signed the 1981 Agreement nor contributed to the Plans subsequently or engaged in covered operations since that time. Defendants' contention that—these facts aside—they do not owe withdrawal liability because their partnership dissolved before the effective date of the MPPAA's withdrawal liability provisions is not well taken.

ERISA itself provides the answer to this question. Section 4218 of that Act provides:

> Withdrawal Not to Occur Merely Because of Change in Business Form or Suspension of Contributions During Labor Dispute
>
> Sec. 4218. Notwithstanding any other provision of this part, an employer shall not be considered to have withdrawn from a plan solely because—
>
> (1) an employer ceases to exist by reason of—
>
> (A) a change in corporate structure described in section 4062(d), or
>
> (B) a change to an unincorporated form of business enterprise,
>
> if the change causes no interruption in employer contributions or obligations to contribute under the plan.
>
> \*   \*   \*   \*   \*   \*
>
> For purposes of this part, a successor or parent corporation or other entity resulting from any such change shall be considered the original employer.

29 U.S.C. § 1398.

■ *Dorn's Transportation, Inc. v. Teamsters Pension Trust Fund,* 596 F.Supp. 350 (D.N.J.1984), supports the clear thrust of this provision—that a mere change in business form will not constitute withdrawal from a plan. In *Dorn's*, Oneida purchased all of Dorn's stock and took over its operations and employees (who belonged to the Teamsters Union). Oneida continued to make contributions to the Teamster's pension plan, but the plan's trustees claimed that Dorn's had withdrawn from the plan when Oneida acquired Dorn's stock. Relying on section 4218, the court ruled that no withdrawal had occurred, explaining that Oneida had taken over all of Dorn's operations and that there was no interruption in contributions. *Id.* at 354.

Defendants' sole response to its problems under section 4218 is to argue that the phrase "change to an unincorporated form of business" in section 4218(1)(B) applies only to a change from a *corporation* to an unincorporated form of business. Thus they claim that their change from a partnership to a different partnership constitutes a withdrawal from the plans despite this section.

This interpretation is belied by both the statute's language and its purpose. First, section 4218(1)(B) explicitly applies whenever an "employer" ceases to exist because of a "change to an unincorporated form of business enterprise." It does not state, as defendants would have it, that the section applies only when there is a change from a corporate to an unincorporated enterprise. Indeed, an "employer" is defined by ERISA to include not only corporations, but also individuals, partnerships, and unincorporated associations. 29 U.S.C. § 1002(5), (9). Second, by substituting the word "corporation" for "employer," defendants would exempt reorganizations of partnerships from section 4218, a result totally inconsistent with its purposes. These purposes were well explained by Representative Thompson before passage of the 1980 amendments:

> [W]e intend that the term employer be construed in a manner consistent with the bill and its purposes. We intend that employers not be able to evade or avoid withdrawal liability through changes in identity, form or control, or through transactions which are less than bona fide or arms length. Hence, for example, a building and construction employer—or for that matter any employer con-

tributing to a plan—will not be able to evade withdrawal liability by going out of business and resuming business under a different identity.

126 Cong.Rec. H7898 (daily ed. Aug. 25, 1980).

■ Section 4218 was intended to cover precisely this kind of case. B & W Coal operated as a partnership of Worthington and Bolden from 1975 through April 1980, when Bolden sold his fifty percent interest in the company to Browning. That sale resulted in no interruption in the company's business or contributions to the pension plans. The agreement between the parties clearly transferred to the successor partnership all of the benefits and obligations of the predecessor. After its incorporation in November 1980, B & W continued to operate as B & W Coal, to use the same employees, offices, and mines. It, too, continued to contribute to the pension plans. Worthington himself testified that incorporation caused no changes in the business. B & W Coal even filed a form with the West Virginia Tax Department indicating that it had previously done business as a partnership known as B & W Coal and that "the partnership was transferred to [the] corporation." *See* Plaintiffs' Exhibit H accompanying its motion for partial summary judgment.

■ Section 4218 explicitly provides that when such a change in form of business occurs, the corporation resulting from the change will be considered the original employer. Defendants' arguments that B & W Coal withdrew from the pension plans before the effective date of withdrawal liability are simply to no avail. The Court concludes as a matter of law that withdrawal did not occur until March 27, 1981, and that B & W Coal Company, Inc., owes withdrawal liability under the MPPAA.

■ The remaining disputes may be dealt with more summarily. B & W Coal's withdrawal liability is a statutory obligation that cannot be avoided simply because another company—here, Bluestone Coal—agreed to make contributions to the plans on its behalf. *Debrecini v. Healthco*

*D.G. Stoughton Co.,* 579 F.Supp. 296 (D.Mass.1984). ERISA imposes withdrawal liability on signatory *employers*, a term that clearly applies to B & W Coal. Moreover, even if Bluestone Coal may have relieved B & W of its contribution obligations, it did not relieve B & W of its withdrawal liability obligation. ERISA explicitly distinguishes between these two types of obligations. *See* 29 U.S.C. § 1392(a).

■ Moreover, B & W's failure to request review and arbitration precludes it from contesting the fact or amount of its liability (*see, e.g., Combs v. Adkins Coal Co., Inc.,* 597 F.Supp. 122, 127 (D.D.C. 1984)), and the Court therefore rules that B & W's withdrawal liability is "due and owing" under 29 U.S.C. § 1401(b)(1).

### IV

For the reasons stated, the trustees for the pension plans are entitled to judgment against B & W Coal Company, Inc., pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g). This section provides:

(2) In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 [29 U.S.C. § 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent ... of the amount determined by the court under subparagraph (A)....

The section also allows an award of costs and attorneys fees, as well as other legal or equitable relief as the court deems appropriate. *Id.* § 1132(g)(2)(D), (E).

In the instant case, defendant B & W Coal Company, Inc., therefore owes:

1. $151,123.25 principal.

2. $38,783.97 interest (plus $39.29 per day interest from October 31, 1985 until date judgment is satisfied).

3. An additional amount equal to the amount listed under 2.

4. Costs and attorneys' fees. The trustees are directed to file documentation for costs and attorneys' fees within 30 days, in order that judgment may be entered.

A final judgment in the appropriate amount will be entered after the documentation set out under 4 above has been submitted.

## V

Defendants have filed a third-party complaint against the Bluestone Coal Corporation, alleging that Bluestone is liable for all of the withdrawal liability. Bluestone has moved to dismiss this complaint for lack of personal and subject matter jurisdiction. Because the Court finds that this Court lacks subject matter jurisdiction over such a claim, it need not reach the personal jurisdiction issue.

Bluestone, a West Virginia corporation, contracted with B & W Coal Company in 1977 to mine coal in a specified seam in West Virginia. Under the contract, Bluestone agreed to make payments to the United Mine Workers' Welfare and Retirement Fund. Bluestone made all these payments, in a timely manner, for the duration of the contract. The contract expired on August 6, 1981. It is the third-party plaintiffs' contention that this agreement to contribute carries with it responsibility for defendants' own withdrawal liability payments.

Third-party plaintiffs advance two arguments in favor of this Court's jurisdiction over the claim against Bluestone. First, in an argument they concede to be unsupported by case law, they assert that Bluestone acted as an employer within the provision of the MPPAA, and that as an employer it is also liable for withdrawal payments. Second, they assert that this Court has ancillary jurisdiction over the third-party claim under Rule 14(a), since the claim arises from the same set of facts and is dependent on the main claim.

These contentions lack merit. *See Debreceni v. Healthco—D.G. Stoughton Co.,* 579 F.Supp. 296 (D.Mass.1984). In that case, the plaintiff sued to collect withdrawal liability payments under the MPPAA. Defendant Healthco had entered into a contract with another company, Foster Medical Corporation, in which Foster bought the assets and assumed the liabilities of Healthco's medical division. One of the liabilities Foster assumed was Healthco's obligation to contribute to a pension fund. Healthco filed a third-party complaint against Foster, alleging that Foster, if anyone, must pay the withdrawal liability. On summary judgment, the court dismissed the claim against Foster, ruling that withdrawal liability is a statutory and not a contractual matter. *See also T.I.M.E.-D.C., Inc. v. Trucking Employees of North Jersey Welfare Fund,* 560 F.Supp. 294 (E.D.N.Y.1983).

The *Debrecini* ruling is in accord with ERISA's basic distinction between the obligation to contribute to a plan and the obligation to pay withdrawal liability. *See* 29 U.S.C. § 1392(a). The facts of the instant case are a good example of why the two obligations are not identical. Not only was B & W Coal the "employer" as to this seam of coal, but only B & W Coal withdrew from the UMW plans. Third-party defendant Bluestone is still a contributing participant. B & W Coal has shown neither a statutory nor contractual basis for forcing such a participant to pay B & W's own withdrawal liability.

On facts quite close to those in the instant case, *Debreceni* answers both any claim that a company which assumes the obligation to contribute to a pension plan becomes obligated to make withdrawal payments as a statutory matter and the claim that Bluestone's liability is somehow inherently dependent on the outcome of the main case—as it must be for jurisdiction to be proper under Rule 14(a)—in the absence of some contractual provision making it so.

Third-party plaintiffs have not alleged the existence of any such contractual obligation. They merely assert that "[t]he basis of [their] Third-Party Complaint is Bluestone's responsibility for the contributions, and the relationship between Bluestone and B & W with respect to such [Pension] Plans ... Bluestone, as the employer reliable for contributions to the Plans, should likewise be liable for withdrawal liability to the Plans." [5] This basis is vague, speculative, and in fact, unsupported by law. It reveals no valid claim that somehow depends on the outcome of the main claim, and can serve as no basis for this Court's assertion of subject matter jurisdiction.

For the above reasons, the third-party complaint against Bluestone Coal Corporation will be dismissed. An appropriate order accompanies this Memorandum.

James Jackson, pro se.

Robert Abrams, N.Y. State Atty. Gen. by Dewey Lee, Mineola, N.Y., for defendants.

**5.** Memorandum of Points and Authorities in Opposition to Third-Party Defendant's Motion to Dismiss Third-Party Complaint at 4–5.