840 F.2d 11
 9 Employee Benefits Ca 1303
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
SUPERIOR POCAHONTAS COAL COMPANY, a West Virginia
Corporation, Plaintiff-Appellant,
v.
ISLAND CREEK COAL COMPANY, a Corporation qualified to do
business in the State of West Virginia; Enoxy Coal,
Incorporated, a Corporation qualified to do business in West
Virginia, Defendants-Appellees.
 No. 87-1115.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 2, 1987.
Decided: Jan. 12, 1988.
 
 James Allan Colburn (James M. Robinson; Baer, Robinson & Colburn, on brief), for appellant.
 Steven Kohn Hoffman (Jonathan D. Schiller; Rogovin, Huge & Lenzner; Michael J. Farrell; Jenkins, Fenstermaker, Krieger, Kayes & Farrell, on brief), for Island Creek Coal Company.
 (John R. Woodrum; Smith, Heenan & Althen; Forrest H. Roles; Anna M. Norton; Smith, Heenan & Althen, on brief), for Enoxy Coal, Inc.
 Before DONALD RUSSELL and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Superior Pocahontas Coal Company (Superior) appeals the district court's grant of summary judgment in its action against Island Creek Coal Company (ICC) and Enoxy Coal Incorporated (Enoxy) to recover $480,000 for the pension-plan withdrawal liability it incurred to the United Mine Workers of America (UMWA) 1950 and 1974 Pension Trusts (the Trusts) when it ceased mining operations. Superior based its claim on an agreement between Superior and ICC (and Enoxy as a successor to ICC). The United States District Court for the Southern District of West Virginia held as a matter of law that Superior was not entitled to reimbursement. Finding no material question of fact existed, the court granted summary judgment in favor of ICC and Enoxy.
 
 
 2
 On appeal Superior claims the district court lacked subject matter jurisdiction. Alternatively, it contends that ICC and Enoxy are liable under the terms of the agreement, that the contract is an adhesion contract which Superior was induced to sign through misrepresentation and abuse of unequal bargaining power, and that even if no contractual liability exists, ICC and Enoxy are liable to Superior for indemnification. Finding no error in the district court's grant of summary judgment, we affirm.
 
 
 3
 On July 17, 1981, Superior and ICC entered into an agreement under which Superior agreed to mine coal at a site owned by ICC in Mingo County, West Virginia. ICC agreed to pay a set price for each ton of coal delivered, and both parties retained the right to terminate the agreement at any time upon thirty days notice. The agreement called for Superior to utilize its own employees for its operations on ICC's property and specified that Superior would exercise sole control over its employees. Superior covenanted that at all times its employees would continue to be represented by UMWA, and ICC agreed to "make all payments required to be made to the UMWA as provided under said 1978 National Bituminous Coal Wage Agreement [ (NBCWA) ] for the work performed" by Superior's employees under the agreement. The NBCWA requires employers to make contributions to the Trusts based on the number of hours worked and the number of tons of coal mined by their employees.
 
 
 4
 ICC sold the site to Enoxy in December 1981. In July 1984 Enoxy exercised its contractual right to terminate the agreement. Initially ICC and then Enoxy made all required payments to the Trusts during the time Superior mined coal at the site. With the end of mining operations at the site, Enoxy terminated the trust payments that had been required under the parties' agreement. As a result of Enoxy's cessation of the payments, Superior incurred liability to the Trusts under the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. Sec. 1381-1461 (1974), amended by Multiemployer Pension Plan Amendments Act of 1980, Pub.L. No. 96-364, 94 Stat. 1208 (1980). The Multiemployer Pension Plan Amendments Act of 1980 (MPPAA) imposes liability on employers who withdraw from a multiemployer pension plan based on the employer's proportionate share of the plan's vested but unfunded benefits. Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 725 (1984). Pursuant to a settlement agreement in the Trusts' suit against Superior in the United States District Court for the District of Columbia, Superior paid the Trusts $480,000. Superior now seeks reimbursement for this payment.
 
 
 5
 Superior first contends the district court lacked subject matter jurisdiction, arguing the case involved only state law issues of contract interpretation and equity. We disagree. Whatever liability ICC and Enoxy have because of Superior's payment to the Trusts flows from the parties' contract requirement that ICC (and Enoxy as its successor) "make all payments required to be made to the UMWA trusts as provided under said 1978 [NBCWA]." Consequently, the case involves interpretation of a collective bargaining agreement subject to the National Labor Relations Act, 29 U.S.C. Secs. 151-187, and therefore involves a federal question, Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985).
 
 
 6
 Next, Superior argues that the terms of its agreement with ICC and Enoxy imposed responsibility for the withdrawal liability on ICC and Enoxy even though the liability stems directly from the application of MPPAA. Superior asserts that the reference in the parties' agreement to the NBCWA is merely for identification and that the cost which ICC and Enoxy agreed to bear is that of any and all payments Superior was required to make to the Trusts. This strained construction of the contract language is untenable. The costs shifted to ICC and Enoxy were only those "required to be made ... as provided under [the NBCWA]." Superior does not argue that the NBCWA imposes withdrawal liability. Withdrawal liability was imposed on Superior, the employer, by statute. See 29 U.S.C. Sec. 1381. We agree with the district court and other district courts that have refused to shift that statutory liability in the absence of an express contractual provision. See, e.g., Connors v. B & W Coal Co., 646 F.Supp. 164, 169 (D.D.C.1986); Debrecini v. Healthco-D.G. Stoughton Co., 579 F.Supp. 296, 297-98 (D.Mass.1984).
 
 
 7
 Superior also claims it is entitled to equitable relief because of its reliance on ICC's alleged misrepresentations and because of ICC's presentation of a "take it or leave it" contract that required Superior to employ UMWA members and contained a clause in which ICC assumed liability to the Trusts but made no mention of the potential for withdrawal liability, constitutes misrepresentation. Superior also asserts that the imposition of this unforeseen liability by a corporation whose advantage in bargaining position enabled it to impose nonnegotiable terms makes the agreement a contract of adhesion. It further argues that these allegations raised material factual issues, which precluded summary judgment. We disagree. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, ----, 106 S.Ct. 2505, 2510 (1986). We agree with the reasoning of the district court that Superior alleged no facts capable of making ICC's failure to point out Superior's potential for liability under MPPAA a misrepresentation. Similarly, no facts alleged by Superior were capable of making the agreement an adhesion contract.
 
 
 8
 Finally, Superior contends that under MPPAA ICC and Enoxy share jointly in its withdrawal liability to the Trusts and that it is entitled to indemnification because the Trusts exacted payment from Superior alone. MPPAA imposes liability for a partial withdrawal on employers who cease to have an obligation to contribute to a multiemployer plan under a collective bargaining agreement but continue to perform work of the type governed by the agreement. 29 U.S.C. Secs. 1381, 1385(b)(2)(A). Superior bases its argument on the reasoning that ICC and Enoxy are employers who were required under a collective bargaining agreement to make contributions to a multiemployer plan and who made a partial withdrawal from the plan. It contends that ICC and Enoxy are employers because they signed the NBCWA as employers and fit under a definition of employer that Superior borrows from Title I of ERISA, 29 U.S.C. Sec. 1002(5)(a). ICC and Enoxy made a partial withdrawal, Superior asserts, when their termination of the contract with Superior ended their obligation to contribute for work performed at the Mingo County site, but they continued to mine coal at other sites. Superior defines withdrawal liability as a tort liability and argues, therefore, that indemnity principles apply.
 
 
 9
 We reject Superior's indemnity argument. While ICC and Enoxy employs mine workers at other sites, they were not the employers of the employees in question. Their signing of the NBCWA as an employer of mine workers does not give them employer status with regard to Superior's employees. Any obligation they might have had to contribute to the Trusts for Superior's employees at the Mingo County site arose out of their contract with Superior and not out of the NBCWA. Furthermore, we perceive no basis to support the argument that withdrawal liability is grounded in tort.
 
 
 10
 The judgment of the district court, accordingly, is affirmed.
 
 
 11
 AFFIRMED.